UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-60306-Civ-COOKE/TORRES

LAURA M. WATSON,

      Plaintiff,

vs.

THE FLORIDA JUDICIAL
QUALIFICATIONS COMMISSION, *et al.*,

      Defendants,

_____/

## OMNIBUS ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

THIS CASE is before me on JQC Defendants' Motion to Dismiss Second Amended Verified Complaint (ECF No. 57) and Florida Bar Defendants' Motion to Dismiss Second Amended Complaint (ECF No. 81). Plaintiff Laura M. Watson ("Plaintiff"), proceeding *pro se*, responded by filing a Motion for Clerk's Default Against JQC Individuals or in the Alternative to Deny Their Unauthorized Motion to Dismiss (ECF No. 58), as well as an Opposition to the Florida Bar's Motion to Dismiss Second Amended Verified Complaint (ECF No. 86). JQC Defendants filed a Reply to Plaintiff's response (ECF No. 69), as did the Florida Bar Defendants (ECF No. 88). I have reviewed the Parties' Motions, the responses and replies thereto, as well as the record and the relevant legal authorities. For the reasons discussed below, the Defendants' Motions to Dismiss are granted.

## I.      PROCEDURAL BACKGROUND

This case arises out of a Florida Judicial Qualifications Committee ("JQC") disciplinary proceeding against Plaintiff, a former judge in the 17th Judicial Circuit of Florida, which was followed by a Florida Bar disciplinary proceeding against Plaintiff. A brief discussion of the procedural posture of this case is warranted. Plaintiff filed a Verified Complaint for Declaratory Judgment, Injunctive Relief, and Damages (ECF No. 1) on February 7, 2014 against the JQC, as well as specific members of the JQC in their official and individual capacities. She concurrently filed a Motion for Temporary Restraining

Order, Motion for Preliminary Injunction and Motion for Permanent Injunction (ECF No. 4) in an effort to enjoin the disciplinary hearing against her scheduled to take place before the JQC on February 10, 2014. On February 9, 2014, I entered an Order Denying Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction (ECF No. 5) under the *Younger*[1] abstention doctrine, which bars federal district courts from interfering with certain ongoing state proceedings. On February 27, 2014, I entered Endorsed Order Closing Case dismissing the case. *See* ECF No. 6. Plaintiff appealed both Orders to the Eleventh Circuit on March 7, 2014. On July 1, 2015, the Eleventh Circuit affirmed my Order Denying Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction, but reversed my dismissal of Plaintiff's claims against the JQC officials in their individual capacities for violations of § 1983, malicious prosecution, abuse of process, and punitive damages.

The instant case was reopened on December 22, 2015 and on January 22, 2016, Plaintiff filed her Amended Verified Complaint (ECF No. 25), in which she named as additional Defendants who are individuals associated professionally with the Florida Bar. In response to Plaintiff's Verified Amended Complaint, JQC Defendants filed a Motion to Dismiss Amended Complaint (ECF No. 29). Plaintiff then filed her Second Amended Verified Complaint ("Second Amended Complaint") (ECF No. 33). JQC Defendants moved to strike the Second Amended Complaint because Plaintiff had not obtained the Defendants' written consent or leave of the Court to amend the complaint pursuant to Federal Rule of Civil Procedure 15(a). *See* ECF No. 34. The Motion to Strike was denied on August 24, 2017 and JQC Defendants were given fourteen days to respond to Plaintiff's Second Amended Complaint, which they did by filing the underlying Motion to Dismiss (ECF No. 57) on September 7, 2016. While the Motion to Strike was pending, the Florida Bar Defendants entered a limited appearance to move for dismissal for failure to timely effectuate service of process as required by Federal Rule of Civil Procedure 4(m). *See* ECF No. 47. The Florida Bar Defendants' motion was denied and Plaintiff was given until January 6, 2017 to serve the Florida Bar Defendants and provide proof of service therein.

---

[1] *Younger v. Harris*, 401 U.S. 37 (1971).

*See* ECF No. 75. The Florida Bar Defendants filed the instant Motion to Dismiss (ECF No. 81) on January 24, 2017.

The gist of Plaintiff's 99-page Second Amended Complaint, which contains approximately 1800 pages of appendices, is that the JQC Defendants and the Florida Bar Defendants violated her constitutional rights and committed a Racketeer Influenced and Corrupt Organization Act ("RICO") violation by pursuing judicial and attorney disciplinary proceedings against her. Plaintiff alleges that Larry Stewart, the complainant in both the Florida Bar and JQC disciplinary proceedings, exercised undue influence over the actors in those proceedings, that his undue influence can be seen in emails intentionally withheld by both the Florida Bar and the JQC, and that the withheld emails are somehow exculpatory and would have changed the outcome of her JQC proceeding. The accusations regarding the improperly withheld emails mostly revolve around Florida Bar Defendant Ghenete Wright Muir, who served as Counsel for the Florida Bar in the Florida Bar prosecution of Plaintiff, but also mention JQC Defendant Miles McGrane, who served as special counsel to the JQC Hearing Panel and prosecuted the case against Plaintiff. Plaintiff also makes allegations that the JQC's contract with JQC Defendant Lauri Waldman Ross, who served as counsel for the JQC Hearing Panel, as well as the Florida Bar contract with Florida Bar Defendant David Rothman, were improper and somehow constituted fraud and self-dealing. The majority of Plaintiff's remaining factual allegations tends to be conclusory, including most of her RICO allegations, and are against the Defendants as a group or are against the JQC and the Florida Bar as organizations.

The Second Amended Complaint contains nine counts against the numerous Defendants. All claims are against the Defendants in their individual capacities. Against the JQC Defendants Mayanne Downs, Member of the JQC Hearing Panel, Honorable Kerry I. Evander, Chair of JQC Hearing Panel, Honorable Thomas B. Freeman, Member of the JQC Investigative Panel, Brooke Kennerly, former Executive Director of the JQC, Miles A. McGrane, III, Special Counsel to the JQC, Honorable Robert Morris, Member of the JQC Hearing Panel, Michael Nachwalter, Member of the JQC Hearing Panel, Lauri Waldman Ross, Counsel to the JQC Hearing Panel, Honorable James A. Ruth, Member of the JQC Investigative Panel, Michael L. Schneider, General Counsel to the JQC, Honorable J. Preston Silvernail, Former Chair of the JQC Investigative Panel, and John G. White, III,

Member of the JQC Investigative Panel. Plaintiff asserts violations of Section 1983 by violations of procedural and substantive due process (Counts I and II), violation of Section 1983 by violations of equal protection (Count III), and punitive damages (Count IV). The rest of the counts are against all the Defendants, including the Florida Bar Defendants John T. Berry, Director of the Florida Bar, John F. Harkness, Executive Director of the Florida Bar; Randi Klayman Lazarus, Lead Attorney/Fort Lauderdale Branch, Ken Marvin, former Director of Bar, Florida Lawyer Regulation, Ghenete Wright Muir, Counsel for the Florida Bar, Adria Quintela, Director of the Florida Bar, Lawyer Regulation, and David Rothman, Special Counsel for the Florida Bar. Against all the Defendants, Plaintiff alleges a civil violation of the Racketeer Influenced and Corrupt Organization Act (Count V) by the predicate acts of Honest Services Mail Fraud, 18 U.S.C. § 1341 (Count VI), Financial Services Fraud, 18 U.S.C. § 1344 (Count VII), Obstruction of Official Proceeding, 18 U.S.C. § 1512 (Count VIII), and Laundering of Monetary Instruments, 18 U.S.C. § 1956 (Count IX).

## I.     LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41 (1957)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). Detailed factual allegations are not required, but a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of the cause of action will not do." *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 555). A complaint's factual allegations must be enough to raise a right to relief above the speculative level. *Id.*

When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A complaint is subject to dismissal under Rule 12(b)(6) "when the

allegations—on their face—show that an affirmative defense bars recovery on the claim." *Marsh v. Butler Cnty, Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001).

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States,* 148 F.3d 1262, 1263 (11th Cir. 1998). However, "this leniency does not give a court license to serve as *de facto* counsel for a party . . . or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs, Inc. v. Cnty. Of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998).

## II.     DISCUSSION

There are two arguments, one made by Plaintiff against JQC Defendants (Motion for Default Judgment) and one made by the Florida Bar Defendants (Failure to Serve), that are somewhat outside the scope of a motion to dismiss standard but are raised in the instant motions. I will address these arguments first before delving into the Defendants' arguments regarding Plaintiff's alleged failure to state a claim.

### A. Plaintiff's Motion for Default Judgment

Plaintiff argues that the instant JQC Defendants' Motion to Dismiss (ECF No. 57) is an impermissible successive motion under Federal Rule of Civil Procedure 12(g). Rule 12(g) states, "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Plaintiff argues that JQC Defendants' Motion to Strike (ECF No. 34) was a Rule 12(f) motion, making the instant JQC Defendant's Motion to Dismiss successive and therefore barred. However, the JQC Defendants' Motion to Strike was not a motion to strike under Federal Rule of Civil Procedure 12(f). JQC Defendants sought to strike the Second Amended Complaint for failure to comply with a court order, not for pleading an insufficient defense or containing redundant, immaterial, impertinent, or scandalous matter as outlined in Rule 12(f). Plaintiff even argued in her Response in Opposition to the Motion to Strike (ECF No. 39) that the motion was not in the proper form of a 12(f) motion. The Honorable Edwin G. Torres, who denied JQC Defendants' Motion to Strike, did not treat it as a Rule 12(f) motion and gave JQC Defendants fourteen days to respond to Plaintiff's Second Amended Complaint. JQC Defendants responded timely. Therefore there is no justification for a default judgment.

**B. Service of Process on Florida Bar Defendants Ghenete Wright Muir, Adria Quintela, and David Rothman**

Florida Bar Defendants Ghenete Wright Muir, Adria Quintela, and David Rothman contest service and seek to dismiss the complaint against them for insufficient service of process pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(5). As outlined above, all of the Florida Bar Defendants initially contested service of the Second Amended Complaint. *See* ECF No. 47. The Second Amended Complaint was filed on April 1, 2016 and by July 8, 2016 the Florida Bar Defendants had not been served. Plaintiff was ultimately granted until January 6, 2017 to serve the Florida Bar Defendants. *See* ECF No. 75. "The defendant has the initial burden of challenging the sufficiency of service and must describe with specificity how the service of process failed to meet the procedural requirements of [Fed. R. Civ. P. 4]." *Int'l Imps., Inc. v. Int'l Spirits & Wines, LLC*, 2011 WL 7807548, at *3 (S.D. Fla. July 26, 2011) (quotation marks and citation omitted). "The burden then shifts to the plaintiff to prove a *prima facie* case of proper service of process." *Id.* If the plaintiff establishes that service was proper, "the burden shifts back to the defendant to bring strong and convincing evidence of insufficient process." *Id.*

Plaintiff has shown that she served Florida Bar Defendant Muir by the January 6, 2017 deadline. Both Florida Bar Defendants Quintela and Rothman were served, at most, eleven days outside the deadline. If a plaintiff fails to serve a defendant within the timeframe established by Rule 4(m), a court may extend the time period to serve defendants if Plaintiff shows good cause for failing to serve defendants timely. *Lepone-Dempsey v. Carroll Cty. Comm'rs*, 476 F.3d 1277, 1281 (11th Cir. 2007). "Even in the absence of good cause, a district court has the discretion to extend the time for service of process." *Id.* (citing *Horenkamp v. Van Winkle & Co.*, 402 F.3d 1129, 1132 (11th Cir. 2005); *Henderson v. United States,* 517 U.S. 654, 663 (1996)). While Plaintiff had almost nine months to serve the Florida Bar Defendants and has not shown good cause for not having served Florida Bar Defendants Quintela and Rothman before the January 6, 2017 deadline, she acted with due diligence in serving them and they were ultimately served with notice of the lawsuit. Florida Bar Defendants Quintela and Rothman have not alleged any prejudice or harm from having been served five and eleven days after the deadline. Florida Bar Defendants Muir, Quintela, and Rothman shall be considered to have been served timely.

### C. Defendants' Claims of Immunity

Both the JQC and Florida Bar Defendants argue that they are entitled to absolute immunity from Plaintiff's suit, and the Florida Bar Defendants also raise the defense of qualified immunity. "Absolute . . . immunity is an affirmative defense that the party pleading it must prove. The district court may dismiss a complaint with prejudice on the basis of the immunity defense if a Rule 12(b)(6) motion demonstrates that the complaint, with all of its allegations accepted as true, indisputably establishes the factual foundation of the defense." *Kivisto*, 587 F. App'x at 524 (citing *Rivera v. Leal*, 3259 F.3d 1350 (11th Cir. 2004); *Long v. Satz*, 181 F.3d 1275, 1279 (11th Ci. 1999)). "Section 1983 was not intended to abolish this immunity (see *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)), and we have been given no reason to suppose that RICO was intended to abolish it either." *Cullinan v. Abramson*, 128 F.3d 301, 308 (6th Cir. 1997).

Prosecutors and judges have absolute immunity from civil suit under the doctrines of judicial and quasi-judicial immunity. *See Imbler v. Pachtman*, 424 U.S. 409 (1976) (discussing immunity of prosecutors); *Pierson v. Ray*, 386 U.S. 547 (1967) (discussing judicial immunity). This immunity does not arise from the Eleventh Amendment,[2] but from longstanding common law principles, which considered it to be in the public interest to protect "the finality of judgments or [to] discourage[e] collateral attacks" by protecting "judicial independence and insulating judges from vexatious actions prosecuted by disgruntled litigants." *Forrester v. White*, 484 U.S. 219, 225 (1988). Prosecutors were extended absolute immunity based on similar reasoning. *See Butz v. Economou*, 438 U.S. 478, 508–10 (1978) (discussing the common law history of judicial immunity and the extension of that immunity to prosecutors and others involved in the judicial process).

Individuals exercising roles similar to prosecutors and judges likewise have absolute immunity from suit. *See Butz*, 438 U.S. at 508 ("[O]ur decisions recognize that there are some officials whose special functions require a full exemption."). "It is the functional comparability of their judgments to those of the judge that has resulted in both grand jurors

---

[2] Plaintiff argues in her response to both Defendants' motions to dismiss that the "law of the case" from her previous appeal establishes that Defendants have no Eleventh Amendment immunity from suit and Defendants therefore cannot claim immunity at all. However, she fails to acknowledge that the immunity claimed by the Defendants has nothing to do with the Eleventh Amendment, but with common law immunity doctrine.

and prosecutors being referred to as 'quasi-judicial' officers, and their immunities being termed 'quasi-judicial' as well." *Id.* at 512. In *Butz*, after reviewing several factors to determine whether the grant of absolute immunity was appropriate, the Supreme Court extended absolute immunity to certain agency officials who perform functions similar to those of judges and prosecutors. Following *Butz v. Economou*, courts have distilled the following three factors in determining whether absolute quasi-judicial immunity is appropriate:

> 1) Are the official's functions similar to those involved in the judicial process?;
> 2) Are the official's actions likely to result in damages lawsuits by
>    disappointed participants?; and
> 3) Do sufficient safeguards exist to protect against unconstitutional conduct?

*Rindley v. Gallagher*, 890 F. Supp. 1540, 1554 (S.D. Fla. 1995).

If a Defendant were not entitled to absolute quasi-judicial immunity under the *Butz* factors, the doctrine of qualified immunity may yet apply. "Qualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Lee v. Ferraro*, 284 F.3d 1188, 1193–94 (11th Cir. 2002). An official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Id.* "If he does that, the burden shifts to the plaintiff to establish "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Ashcroft v. al Kidd*, 563 U.S. 731, 735 (2011) (quotation marks omitted). "A government official acts within his discretionary authority if his actions were (1) undertaken pursuant to the performance of his duties and (2) within the scope of his authority." *Mikko*, 857 F.Supp. at 1144 (citing *Lenz v. Winburn*, 51 F.3d 1540, 1545 (11th Cir. 1995). "[A] court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Id.* (quoting *Harbert Int'l Inc. v. James*, 157 F.3d 1252, 1266 (11th Cir. 2004).

### a. JQC Defendants

The proceeding before the JQC "was a civil proceeding akin to a criminal prosecution because it sought to punish [Plaintiff] for alleged unethical actions, and it was initiated and prosecuted by a state actor." *Watson v. Florida Judicial Qualifications Com'n*, 618

Fed. App'x 487, 490 (11th Cir. 2015). The JQC is established by the Florida constitution and is divided into two panels: the investigative panel and the hearing panel. "The investigative panel is vested with the jurisdiction to receive or initiate complaints, conduct investigations, dismiss complaints, and upon a vote of a simple majority of the panel submit formal charges to the hearing panel." Art. V., Section 12(b), Fla. Const. "The hearing panel is vested with the authority to receive and hear formal charges from the investigative panel and upon a two-thirds vote of the panel recommend to the supreme court the removal of a justice or a judge . . . ." *Id.* The supreme court receives the recommendation from the hearing panel, and "may accept, reject, or modify in whole or in part the findings, conclusions, and recommendations of the commission." Art. V., Section 12(c), Fla. Const. The supreme court may then "order that the justice or judge be subjected to appropriate discipline, or be removed from office with termination of compensation for willful or persistent failure to perform judicial duties or for other conduct unbecoming a member of the judiciary demonstrating a present unfitness to hold office . . . ." *Id.*

The JQC Defendants argue they are entitled to absolute immunity, so I will first address the doctrine of quasi-judicial immunity. I will examine the second and third *Butz* factors first, as the questions they ask can be answered more readily than the question of the first factor. The second *Butz* factor asks if the official's actions are likely to result in damages lawsuits by disappointed participants. The answer is yes; it is eminently foreseeable that a JQC proceeding, especially one resulting in a sanction, could lead to a disgruntled judge filing a damages claim against the JQC members. "A finding of absolute immunity will therefore insure that 'individual . . . members perform their functions for the public good without harassment or intimidation.'" *Rindley*, 890 F. Supp. at 1554 (quoting *Horwitz v. State Bd. of Medical Examiners of State of Colo.*, 822 F.2d 1508, 1515 (10th Cir. 1995). As to the third *Butz* factor, I find that there are sufficient safeguards in the hearing process to protect a judge's constitutional rights. Once formal charges are filed, the aggrieved judge is allowed to file a written Answer. FJQCR 9.[3] After the filing of an Answer, a hearing subject to the

---

[3] Plaintiff challenges the use of the 2012 version of these rules during her JQC hearing; she claims the 2012 amendments to the rules were not properly adopted and are therefore unpublished. ECF No. 33, ¶¶ 276–80. Nevertheless, for purposes of determining quasi-judicial immunity, these are the rules I will consider because they were the rules that were used.

Florida Rules of Civil Procedure will be set. FJQCR 11, 12. At the hearing, the judge will have the right "and reasonable opportunity to defend against the charges by the introduction of evidence, to be represented by attorney(s), . . . to examine and cross-examine witnesses, . . . and to have subpoenas issued for attendance of witnesses to testify or produce books, papers, and other evidentiary matter." FJQCR 15(a). The judge may receive a copy of the transcript of the hearing, and if there is an adverse ruling against her, she has the right of automatic review by the Florida supreme court. FJQCR 15(b), 20. Further, if a judge fears she cannot receive a fair hearing because of the prejudice of one or more members of the hearing panel against the judge, the hearing Panel member *shall* recuse herself or himself if the judge presents an affidavit containing specific facts supporting the basis for her fears and her affidavit is supported in substance by the affidavit of at least two reputable citizens not kin to the judge or the judge's attorney. FJQCR 25. These procedures are similar to a judicial proceeding and adequately protect a judge's rights "against unconstitutional conduct without reliance on private damages lawsuits." *Rindley*, 890 F. Supp. at 1554.

As for the first *Butz* factor, which examines whether the JQC official's function is similar to those involved in the judicial process, I will address the JQC Defendants on a more individual basis.

### i. Function of the Investigative Panel

The JQC Defendants who were members of the Investigative Panel are the Honorable Thomas B. Freeman, the Honorable James A. Ruth, the Honorable J. Preston Silvernail, and John G. White, III[4]. JQC Defendant Miles A. McGrane, III, served as Special Counsel to the Investigative Panel. "The investigative panel is vested with the jurisdiction to receive or initiate complaints, conduct investigations, dismiss complaints, and upon a vote of a simple majority of the panel submit formal charges to the hearing panel." Art. V., Section 12(b), Fla. Const. The JQC Rules further elucidate the role of the investigative panel. *See* FJQCR 6. It is the investigative panel that appoints the Special Counsel once it has determined that probable cause exists. FJQCR 6(f). The Special Counsel gathers and presents evidence before the the Hearing Panel with respect to the

---

[4] JQC Defendant White is also mentioned in the Second Amended Complaint in his role as the Florida Bar President, *see* ECF No. 33, ¶¶ 117–18; however, he is being sued in this action only in his individual capacity as a member of the JQC Investigative Panel.

charges against the judge, and otherwise acts as counsel in connection with the prosecution of the charges against the judge. *Id.* At first glance, these tasks are "functionally comparable" to the role of a prosecutor in a criminal or other administrative proceeding and would be entitled to quasi-judicial immunity.

Upon further investigation, Plaintiff does nothing to show that the JQC investigative panel members' functions were not similar to the role of prosecutors, or that the Defendants stepped outside their roles such that absolute immunity would not attach to that action. "Absolute prosecutorial immunity is function related. The defendant prosecutor must show that it is 'justified for the function in question.'" *Mikko v. City of Atlanta, Georgia*, 857 F.3d 1136, 1142 (11th Cir. 2017) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 268–69 (1993)). Of JQC Defendants Freeman, Ruth, Silvernail, White, and McGrane, only McGrane is alleged to have done any specific act other than simply being a part of the JQC investigative panel. *See generally* ECF No. 33. Plaintiff's main complaint against the Defendants seems to be that they carried out their role as the investigative panel and filed formal charges against her, all of which clearly fall within the scope of a prosecutor's duties. "A prosecutor is immune from liability under § 1983 for his actions 'in initiating a prosecution and in presenting the State's case,' and for actions that are 'intimately associated with the judicial phase of the criminal process.'" *Mikko*, 857 F.3d at 1142 (quoting *Imbler v. Pacthman*, 424 U.S. 409, 430–31 (1976)). Plaintiff alleges that the JQC as an organization does not follow its own rules and enforces them in an arbitrary manner, *see* ECF No. 33 ¶¶ 79–107; however, these allegations are not specific to any JQC Defendant, and even if they were, the claim would be barred by absolute immunity. *Mikko*, 857 F.Supp. at 1143 (stating that a charging decision is a prosecutorial function protected by absolute immunity).

As to JQC Defendant McGrane, Plaintiff alleges that he knew of the emails showing witness/complainant Larry Stewart's undue influence, refused to turn them over to Plaintiff, and denied the existence of these emails to the Chair of the JQC Hearing Panel so that the Chair did not require the emails to be turned over to Plaintiff prior to her JQC Hearing. ECF No. 33, ¶¶ 123–24, 145–46, 154, 157. In only two places in her entire Second Amended Complaint does Plaintiff categorize these emails as exculpatory. *Id.* at ¶¶ 92 n.17, 159. This may be because they are not exculpatory. The emails certainly show that Mr. Stewart was immensely interested in Plaintiff's case before the JQC and constantly

communicated with members of the JQC and the Florida Bar; however, the emails contain nothing about the underlying charges for which Plaintiff was removed from judicial office being false. In any case, the emails were emails to and from a complaining witness in the exercise of prosecutorial advocacy, meaning there is no liability for the emails themselves, as they fall within the ambit of prosecutorial immunity. "Immunity extends to a prosecutor's 'out-of-court effort to control the presentation of a witness' testimony,' because that act is 'fairly within the prosecutor's function as an advocate." *Mikko*, 857 F.3d at 1142 (quoting *Buckley*, 509 U.S. at 272). Even if the emails were intentionally withheld, which is not necessarily a reasonable inference from Plaintiff's allegations in her Second Amended Complaint, they were withheld in the exercise of prosecutorial discretion during the course of discovery—an activity "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430–31.

Plaintiff also alleges that JQC Defendant McGrane was a close friend of Mr. Stewart's law partner, meaning he must have also had an improper familiarity with Mr. Stewart that was unethical. ECF No. 33, ¶¶ 137–38. Whether or not these allegations rise to an ethical violation, they are not a basis for civil liability and would not support the abandoning of prosecutorial immunity. Rules Regulating the Fla. Bar, 4 Preamble: A Lawyer's Responsibilities ("Violation of a rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption that a legal duty has been breached.").

### ii.  Functions of the Hearing Panel

The JQC Defendants who were part of the Hearing Panel that heard Plaintiff's case are Mayanne Downs, the Honorable Kerry I. Evander, the Honorable Robert Morris, and Michael Nachwalter. JQC Defendant Lauri Waldman Ross was Counsel to the Hearing Panel. "The hearing panel is vested with the authority to receive and hear formal charges from the investigative panel and upon a two-thirds vote of the panel recommend to the supreme court the removal of a justice or a judge . . . ." Art. V., Section 12(b), Fla. Const. The hearing panel clearly serves a judicial function. As articulated by the Supreme Court, "judges enjoy absolute immunity from liability in damages for their judicial or adjudicatory acts." *Forrester v. White*, 484 U.S. 219, 225 (1988) (citing *Bradley v. Fisher*, 13 Wall. 335, 348, 20 L. Ed. 646 (1872)). "A judge will not be deprived of immunity because the action he took

12

was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) (internal quotations and citations omitted).

Plaintiff has alleged absolutely no specific facts against JQC Defendants Mayanne Downs, Honorable Kerry I. Evander, Honorable Robert Morris, and Michael Nachwalter other than being a member of the JQC Hearing Panel. Plaintiff's main issue with these Defendants seems to be that they recommended her removal from judicial office for conduct that occurred long before she was a judge,[5] taking it outside their jurisdiction. As noted by the Florida Supreme Court, "despite Judge Watson's protestations to the contrary, the JQC and this Court have jurisdiction over her conduct." *In re Watson*, 174 So. 3d 364, 369 (Fla. 2015) (citing *In Re Henson*, 913 So.2d 579, 589 (Fla. 2005) ("Misconduct committed by an attorney who subsequently becomes a judge falls within the subject-matter jurisdiction of this Court and the JQC, no matter how remote. . . . JQC proceedings are constitutionally authorized for alleged misconduct by a judge during the time he or she was a lawyer.")); *see also* Art. V, Sect. 12(a)(1), Fla. Const. Because the JQC Defendants Mayanne Downs, Honorable Kerry I. Evander, Honorable Robert Morris, and Michael Nachwalter plainly acted within their jurisdiction in fulfilling their judicial function, they are entitled to absolute immunity.

JQC Defendant Lauri Waldman Ross served as Counsel to the Hearing Panel. The role of Counsel to the Hearing Panel is filled by a member of the Florida Bar "designated by the Hearing Panel to serve as legal advisor to the Hearing Panel." FJQCR 2(7). "As Counsel for the Hearing Panel, [the] duties will include the rendering of legal opinions and advice to the Chair and the Hearing Panel Members concerning their respective duties." Ex.

---

[5] It should be noted that any remoteness in time from the conduct in question and Plaintiff taking judicial office is at Plaintiff's request. The conduct at issue stems from a 2004 settlement agreement. Plaintiff was sued civilly by Mr. Stewart's firm in 2004 and a judgment was entered against her in 2008, which Plaintiff appealed. *See* ECF No. 57-1, p. 1. After the trial court judgment was entered, Mr. Stewart filed a complaint with the Florida Bar against Plaintiff. *Id.* at 3.The Florida Bar case was deferred at Plaintiff's request, pending her appeal of the trial court judgment. *Id.* The trial court's judgment was affirmed in May 2012 and the Florida Bar reopened its case against Plaintiff. *Id.* In November 2012, Plaintiff was elected as judge, wherein the Florida Bar lost jurisdiction to proceed with its complaint. *Id.* at 3–4. The complaint was then forwarded to the JQC, who filed a Notice of Formal Charges on July 24, 2013. *Id.* at 4.

EE, ECF No. 28-9. Plaintiff alleges no other acts of Defendant Ross other than being Counsel to the Hearing Panel and apparently accepting another appointment as Counsel to the Hearing Panel on Plaintiff's case months after Plaintiff's case had been concluded. ECF No. 33, ¶¶182–84, 206–11. In performing her duty as Counsel to the Hearing Panel, Defendant Ross' function was extremely similar to that of a law clerk. The doctrine of judicial immunity has been deemed to extend to law clerks, as they are "intimately connected with the judge's own exercise of the judicial function." *In re Lickman*, 304 B.R. 897, 903 (Bankr. M.D. Fla. 2004) (quoting *Oliva v. Heller,* 839 F.2d 37, 40 (2d Cir.1988); *see also Jallali v. Florida*, 2010 WL 1856173, at *2 (S.D. Fla. May 7, 2010), *aff'd*, 404 F. App'x 455 (11th Cir. 2010). JQC Defendant Lauri Waldman Ross is entitled to absolute immunity for any actions taken in her role as Counsel. With respect to her accepting appointment of a contract after Plaintiff's case had ended, the acceptance cannot be viewed as a quasi-judicial function. Plaintiff has not alleged enough to support an inference that she was injured by such conduct, or that such conduct was in any way a violation of her constitutional rights or the RICO statute. For any action taken outside Defendant Ross' role as Counsel to the Hearing Panel, Plaintiff has failed to state a claim for which relief can be granted.

### iii.  Functions of Executive Director and General Counsel to the JQC

The last remaining JQC Defendants are Brooke Kennerly, who served as the Executive Director of the JQC, and JQC Defendant Michael Schneider[6], who served as General Counsel to the JQC. Plaintiff has alleged no specific acts of Defendant Kennerly other than being the Executive Director of the JQC. As Executive Director, Defendant Kennerly's duties would have been to "supervise [JQC] staff and to render such services to the Commission and its several panels as required, provided, however, that the Executive Director and staff will provide only ministerial or similar services to facilitate the activities of the Hearing Panel." FJQCR 2(11). Because Plaintiff alleges no actions specific to JQC Defendant Kennerly, it is impossible to tell whether her actions would fall within a category of absolute immunity. However, the doctrine of qualified immunity applies. Plaintiff's failure to allege that Defendant Kennerly did anything other than be the Executive Director of the JQC necessarily means that she acted within the scope of her discretionary authority.

---

[6] The specific acts JQC Defendant Schneider is alleged to have committed appear to be in his capacity as General Counsel of the JQC.

Further, Defendant Kennerly simply being the Executive Director of the JQC is not a violation of Plaintiff's constitutional rights, nor does it constitute a RICO conspiracy. Defendant Kennerly is therefore entitled to qualified immunity. *See Lee*, 284 F.3d at 1193–94; *Ashcroft*, 563 U.S. at 735.

As General Counsel to the JQC, Defendant Schneider's role would have been to serve as legal advisor to the Commission and Investigative Panel, and perform such other duties as authorized by the Commission. FJQCR 2(6). Plaintiff's allegations against Defendant Schneider are that he signed the JQC Notice of Investigation, as well as JQC Defendant Ross' appointment letter to act as Counsel to the Hearing Panel. ECF No. 33, ¶¶ 59, 207–09. In assisting the JQC in fulfilling its prosecutorial advocacy function by signing the Notice of Investigation, Defendant Schneider is entitled to absolute immunity. In signing the appointment letter for Defendant Ross, however, Defendant Schneider was fulfilling more of an administrative function. I must then look to see if this act was taken within his discretionary authority. "A government official acts within his discretionary authority if his actions were (1) undertaken pursuant to the performance of his duties and (2) within the scope of his authority." *Mikko*, 857 F.Supp. at 1144 (citing *Lenz v. Winburn*, 51 F.3d 1540, 1545 (11th Cir. 1995). There is no reason to think that signing an employment contract is outside the scope of Defendant Schneider's authority as General Counsel to the JQC. Plaintiff has not alleged enough to support an inference that she was injured by such conduct, much less suffered a violation of a constitutional or statutory right, as required to pierce the veil of qualified immunity. Defendant Schneider's administrative actions taken in the course of his role as Counsel to the Hearing Panel are protected by qualified immunity.

> **b. Immunity as to the Florida Bar Defendants**

The Florida Bar Defendants are John T. Berry, John F. Harkness, Randi Klayman Lazarus, Ken Marvin, Ghenete Wright Muir, Adria Quintela, and David Rothman. "In the performance of their disciplinary functions, the Florida Bar and its disciplinary staff act as an official arm of the Florida Supreme Court and enjoy absolute immunity for such functions." *Tindall v. The Florida Bar*, 1997 WL 689636, at *4 (M.D. Fla. Oct. 14, 1997), *aff'd sub nom. Tindall v. House-Stewart*, 163 F.3d 1358 (11th Cir. 1998) (citing *Carroll v. Gross,* 984 F.2d 392 (11th Cir.1993)). "Prosecutors, including state bar disciplinary advocates, are absolutely immune from all suits challenging their prosecutorial advocacy functions."

*Kivisto v. Soifer*, 587 F. App'x 522, 523 (11th Cir. 2014); s*ee also Caffey v. Alabama Supreme Court*, 469 F. App'x 748, 752 (11th Cir. 2012)

I must therefore address whether each Florida Bar Defendant was exercising a prosecutorial function when engaging in the conduct alleged in Plaintiff's Second Amended Complaint. *Mikko*, 857 F.3d at 1142. Florida Bar Defendants Berry and Marvin are both addressed in Plaintiff's Second Amended Complaint in their capacity as Directors of the Florida Bar, and Defendant Harkness[7] is named as Executive Director of the Florida Bar. The specific acts they are alleged to have taken are essentially that they received emails from Mr. Stewart, and in Defendant Marvin's case, responded to Mr. Stewart that a complaining witness has no private rights to pursue disciplinary action or demand the Florida Bar proceed with disciplinary charges against an attorney. ECF No. 33, ¶ 162. Florida Bar Defendant Quintela, named in this suit as Director of the Florida Bar, Lawyer Regulation, is similarly only alleged to have received emails from Mr. Stewart, and in some instances to have responded to him in a similar manner as Defendant Marvin. ECF No. 33, ¶ 153; ECF No. 28-5, p. 1. While none of these Defendants was the official prosecutor against Plaintiff, their receipt of the emails and response to Mr. Stewart was clearly in support of a case that the Florida Bar was actively prosecuting and were done in an effort to assist the Florida Bar attorneys who *were* actively investigating and prosecuting the case. These attorneys were required to communicate with the complainant. *See Manzini v. The Florida Bar*, 511 F. App'x 978, 981 (11th Cir. 2013) (citing Rules Regulating the Fla. Bar 3-7.4(f) (requiring bar counsel to assist grievance committee at its request by notifying complainants and respondents of committee actions); Rule 3-7.5(d) (requiring bar counsel to notify complainant and respondent of actions by the Board of Governors)). While these actions were not squarely within the province of prosecutorial advocacy, it is clearly within the scope of authority of Directors of the Florida Bar to assist their staff attorneys in prosecuting cases. Such actions are not violations of the Constitution or the RICO statute, and therefore are entitled to quasi-judicial immunity.

---

[7] Plaintiff also alleges Florida Bar Defendant Harkness was elected as Executive Director improperly. ECF No. 33, ¶¶ 257–59. Needless to say, this does not amount to a constitutional violation nor a violation of the RICO statute, and Plaintiff has suffered no harm by it.

Florida Bar Defendant Lazarus prosecuted the case against Plaintiff. ECF No. 33, ¶ 22–24. Florida Bar Defendants Muir and Rothman prosecuted a Bar complaint against Plaintiff's ex-husband and former partner Darin J. Lentner.[8] ECF No. 33, ¶ 36. However, all actions alleged by these Defendants were taken in their role as prosecutorial advocates. Defendant Lazarus is alleged to have filed the Bar complaint against Plaintiff and "fraudulently" argued that Plaintiff should be disbarred. ECF No. 33, ¶ 22. She allegedly also presented false testimony and advocated for Plaintiff to pay into the Client Security Fund. *Id.* at ¶¶ 23, 37–38. Defendants Muir and Rothman are alleged to have done the same against Lentner. *Id.* at ¶¶ 36, 77. Absolute immunity attaches to these actions. "Prosecutors are immune for appearances before a court and conduct in the courtroom, including examining witnesses and presenting evidence . . . ." *Hart v. Hodges*, 587 F.3d 1288, 1295 (11th Cir. 2009) (citing *Burns v. Reed*, 500 U.S. 478, 490–92 (1991)). "Prosecutorial immunity [also] applies . . . to the prosecutor's actions in initiating a prosecution and presenting the State's case." *Id.* at 1295 (citing *Imbler*, 424 U.S. at 431).

Additionally, Plaintiff alleges Defendants Muir and Rothman exchanged emails with Mr. Stewart and intentionally withheld many of those emails. As discussed above, the Defendants were well within their rights to have exchanged emails with a complainant. Rules Regulating the Fla. Bar 3-7.4(f); Rule 3-7.5(d). Even if the emails showed undue influence, which is not necessarily a reasonable inference, a "prosecutor is immune for malicious prosecution." *Hart*, 587 F.3d at 1295. It stands to reason that a prosecutor is immune for malicious prosecution regardless of his or her malicious reasons, even if the malicious prosecution were on behalf of someone else. As for whether the emails were withheld intentionally, that is almost too strong an inference to make from Second Amended Complaint and appendices. *See* Ex. A, ECF No. 28, p. 12–6 (notice to the JQC and Florida supreme court of the recently discovered emails); Ex. B, ECF No. 28, p. 30–37 (deposition testimony of Defendant Muir explaining how the emails were likely inadvertently withheld). However, even if the withholding was intentional, it was within the purview of the prosecutors to determine what evidence was discoverable and subject to confidentiality and what was not. Further, the emails were turned over to Plaintiff once they

---

[8] Plaintiff states that Mr. Lentner has assigned his claims to her under the RICO Act. *See* ECF No. 33, ¶¶ 1, 6.

were discovered; while Plaintiff was unable to use them in her JQC proceeding, she would have had them in her subsequent Florida Bar proceeding. Although the emails showed the intense interest of complainant Mr. Stewart, again, they were certainly not exculpatory. *See supra*, p. 10–11. None of the actions alleged were outside of the zone of prosecutorial advocacy, and therefore Defendants Muir and Rothman are likewise entitled to absolute immunity with respect to any intentional withholding of the emails.

As to Defendant Rothman, Plaintiff alleges that his contract and bills as special counsel to the Florida Bar were not properly approved by the Florida Bar Board of Governors. ECF No. 33, ¶¶ 252–56, 260. Florida Bar Defendants Berry and Harkness are alleged to have been involved and approved of this impropriety. Regardless, Plaintiff has not shown she suffered an injury for this action, nor has she shown a violation of her constitutional rights or a violation of the RICO statute by including this information in her Second Amended Complaint. Whatever misdeed these actions might amount to, they are not a claim for which relief can be granted.

## D. CONCLUSION

For the reasons stated above, Defendants' Motions to Dismiss (ECF Nos. 57, 81) are **GRANTED**. Plaintiff's Second Amended Complaint (ECF No. 33) is **DISMISSED** *with prejudice*. The Clerk shall **CLOSE** this case. All pending motions, if any, are **DENIED** *as moot*.

**DONE and ORDERED** in chambers at Miami, Florida, this 28th day of July 2017.

*Marcia G. Cooke*
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of record*